Sarah V. Denise, Respondent, *v.* Albert L. Swett, Appellant.

The State courts have no jurisdiction of an action for an infringement of a patent, and so, unless there is an agreement on the part of the owner for the manufacture and sale of the patented article, an action is not maintainable in said courts to recover therefor.

In 1882 B., the owner of a patent, and plaintiff's assignor, and the firm of S. & S., entered into an agreement by which he gave to the firm a license to manufacture and sell the patented article for one year on payment of specified royalties. By the terms of the agreement the firm had the privilege of renewing the license on giving sixty days' notice. The agreement was renewed until May 1, 1885, when a new agreement was made renewing it for another year, but any further extension to depend upon the mutual agreement of the parties. Pending negotiations for renewal the firm continued to manufacture the article and paid the agreed royalties up to June 30, 1886. No new agreement was made. B. notified the firm that the license was revoked, and the old agreement was considered by both parties as terminated at that time. The firm, however, thereafter manufactured and sold an article varying in some particulars from the patent, but in substance the same, which it claimed was not an infringement upon the rights secured by the letters patent. In an action to recover royalties for the goods so manufactured, *held*, that the continued manufacture and the failure of B. to take further action to prevent it after said notice, did not amount to a waiver of the notice or a renewal of the license, and so plaintiff was not entitled to recover the agreed royalties; that the only cause of action was for an infringement, of which the state court had no jurisdiction.

*U. M. Co.* v. *Lounsbury* (41 N. Y. 363), distinguished.

*Denise* v. *Swett* (68 Hun, 188), reversed.

(Argued May 3, 1894; decided June 5, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 28, 1893, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edmund L. Pitts* for appellant. If the cause of action does not arise from a contract, or agreement to pay for use, or manufacture of a patented article, but is for the infringement of a patent right, or to recover compensation or damages for the use, or sale and manufacture of a patented article, the United States courts have exclusive jurisdiction. (*Hyatt* v. *Ingalls*, 124 N. Y. 93, 102; *H. S. M. Co.* v. *Reinoch*, 102 id. 167; *S. P. P. Works* v. *Sturling*, 127 U. S. 376; *Brusie* v. *Peck*, 135 N. Y. 622; *Allison* v. *Hart*, 30 N. Y. S. R. 697; *Dudley* v. *Mayhew*, 3 N. Y. 1; *Hovey* v. *R. T. P. Co.*, 57 id. 119; *Dewitt* v. *E. N. M. Co.*, 66 id. 461; *C. S. S. Co.* v. *Clark*, 100 id. 365; *Kayser* v. *Arnold*, 2 N. Y. S. R. 635; *Skinner* v. *Wood*, 140 N. Y. 217.) The evidence shows that Brown's patents are worthless; that the invention was not new or novel, but had been in public use for many years. While the agreement was in force, we concede, the defendant would be precluded from questioning its validity, but without an agreement, or after it had terminated, this doctrine does not apply, and he had the right to deny its legality, and the doctrine of estoppel does not apply. (*Camp* v. *Camp*, 5 Conn. 291.) The question of jurisdiction was fully pleaded in the answer, although it was not necessary to be taken by demurrer or answer. (Code Civ. Pro. § 499; *De Barnie* v. *Halliday*, 4 Abb. [N. C.] 111.) The referee erroneously refused to find that the agreement set forth in the complaint was not continued in force or effect after June 30, 1886, and was not in force or effect between the parties after that date. (*Beck* v. *Sheldon*, 48 N. Y. 365; Code Civ. Pro. § 993; *James* v. *Cowing*, 82 N. Y. 451; *Bedlow* v. *N. Y. F. D. Co.*, 112 id. 263.) While we understand that this court will not

reverse upon a question of fact, we do understand it to be error, of which it will take cognizance, when upon all the evidence the facts as found are not supported, and upon the uncontradicted evidence, the facts the referee refused to find are fully established. (*Kennedy* v. *Porter*, 109 N. Y. 526; *Halpin* v. *P. Ins. Co.*, 118 id. 167.)

*Quincy Van Voorhis* for respondent. The plaintiff has a cause of action on the agreement and the action was properly brought. (*Thompson* v. *Bank B. N. A.*, 82 N. Y. 1; *Hyatt* v. *Ingalls*, 124 id. 93.) This is strictly an action upon contract for the recovery of money. (*Hyatt* v. *Ingalls*, 124 N. Y. 93; *Albright* v. *Teas*, 106 U. S. 613.) It is of no consequence whether the principle of the patented device is new or old, or whether the patent is valid or invalid; the defendant is estopped from raising any question of that sort. (*Hyatt* v. *Ingalls*, 124 N. Y. 93.) The defendant's contention that the plaintiff has not established her title to the license fees which accrued after April 13, 1887, has nothing to support it. (Code Civ. Pro. § 993; *Turner* v. *Weston*, 133 N. Y. 650; *Travis* v. *Travis*, 122 id. 449; *Daniels* v. *Smith*, 130 id. 696; *Thompson* v. *Bank of B. N. A.*, 82 id. 1; *Burnap* v. *Bank of Potsdam*, 96 id. 125.) The referee properly refused to find defendant's request. (Code Civ. Pro. § 1023; *Davis* v. *Leopold*, 87 N. Y. 620; *Callanan* v. *Gilman*, 107 id. 360.)

PECKHAM, J. This is an action brought to recover certain royalties alleged to be due plaintiff by virtue of an agreement between plaintiff's assignor and the predecessors of the defendant, under which it is alleged the defendant and his predecessors (whose liabilities in that regard the defendant assumed) manufactured and sold a certain patented article designated in the agreement as "an improved screw barrel press."

The case was tried before a referee, who reported in favor of the plaintiff, and the judgment entered upon such report has been affirmed by the General Term.

The liability of the defendant depends upon the question

whether, subsequent to June 30, 1886, the agreement to pay royalties was in force. The plaintiff affirms and the defendant denies the proposition. Unless there were an agreement to pay royalties for the manufacture, it is plain that the state courts would have no jurisdicton, for they cannot entertain an action to recover damages for an infringement of a patent. (*The Continental Store Service Co.* v. *Clark,* 100 N. Y. 365, and cases cited.)

Upon the question of the existence of the alleged agreement the evidence is without contradiction and may be thus stated : In 1882 one Henry H. Brown was the proprietor of the invention above designated, and defendant and one Samson were partners in business as manufacturers in Orleans county, in this state. They entered into an agreement with Brown in July of above year under which Brown licensed the partners to manufacture and sell the patented article for one year from July 1, 1882, upon payment of certain named sums for royalties upon each and every dozen presses manufactured and sold by them. The agreement contained the further provision that the partners might obtain an extension of the agreement for any length of time within the life of the patent or which might be desired by them upon their giving notice in writing of their desire to renew the contract at least sixty days before its expiration. This agreement was in fact extended under the above provision from year to year until May 1, 1886, and it is conceded that the renewal made in the spring of 1885 was for a term which would end in May, 1886.

Prior to May, 1886, there had been some disagreements between the parties in regard to the conduct of the business, and it was undecided whether the agreement would be continued or not. By a provision which was put in the agreement when it was renewed in 1885, the further extension from May, 1886, depended upon the mutual agreement of the parties. On the 4th of May, 1886, the partners wrote a letter asking that the contract be renewed. Correspondence and interviews succeeded, but the agreement was not renewed,

and on June 14 and 17 respectively the partners reiterated their request to Brown for its renewal. On the 19th of June Brown wrote to the partners stating that as the terms of his letter of the 17th were not accepted he thereby revoked the same and he offered to take the stock off their hands and entered into some further details now immaterial.

The letter of Brown dated the 17th of June and referred to in his letter of the 19th, is not in the record, but the evidence leads to the inference that it contained an offer to renew the contract upon terms therein stated. There is no proof that the terms were accepted, and, on the contrary, Brown, in his letter of the 19th of June, says they were not. In the meantime and pending these negotiations the partners had continued the manufacture of the article. As to the practical effect of the correspondence and of the letter of the 19th of June written by Brown to the partners, there is no divergence of evidence. Both Brown and Swett, the defendant, were sworn on the trial and they both agree that they regarded the agreement as terminated from that time, June 19. The partners finished or continued to make the presses up to June 30th after the receipt of the letter, and they furnished returns up to that time and accounted for and paid the royalties due up to that date, but from that time they never made another report and did not consider themselves thereafter as manufacturing under any agreement. Up to that time they had made quarterly reports as to royalties.

The testimony further shows that after June 30th they not only did not manufacture under the agreement, but the defendant maintained that the machine which was manufactured after that date was not identical with the one described in the agreement. The evidence is undisputed that in truth they did not after June 30th manufacture an article which was absolutely and in detail identical with the article mentioned in the agreement, although the referee finds that the two articles are in substance alike. Both parties testified in so many words to the termination of the agreement before July 1, 1886. The defendant was called by the plaintiff as a wit-

ness on the trial, and he said on examination by his own counsel, that the letter of June 19th ended any attempt on their part to renew the contract; that ended it; there was no correspondence or conversation after that and no attempt made to renew or extend it, and it was not renewed; they sent back to Brown certain articles which were useless to them after the agreement expired and which they could only use under the agreement; they did this by letter June 29th, 1886; on the 4th of July following the partners wrote a letter to Brown giving him a statement of presses made up to June 30th preceding, and notifying him that they had placed amount of royalties on them to Brown's credit; the letter was the final settlement of sales up to that date and no dealings after that were had with Brown, and he never thereafter called upon the partners to make any payment by reason of the agreement or to make any report in regard to it, except that Brown says that possibly he may have asked for a report in the fall of 1886. In June, 1891, it appears from Brown's own evidence that he had a conversation with the defendant upon the subject of the article the defendant had been manufacturing since the termination of the agreement, and in that conversation Brown said that the article which defendant had been thus manufacturing was an infringement on his rights, and defendant had replied to him that if he were of that opinion he had better contest it. The defendant during the time of his manufacturing, after the termination of the agreement, maintained his right (outside of the old agreement and assuming its termination) to manufacture the article in the way he was doing, and claimed that it was not the same article mentioned in the agreement and that it was not any infringement on the rights of Brown. This is incompatible with a manufacture under the agreement. Whether the article manufactured were or were not substantially identical with that described in the agreement, the evidence is clear and uncontradicted that defendant maintained it was not, and that he had the right to manufacture it without regard to any agreement and assuming its termination. Upon this question the evidence is also clear

that defendant was willing to try conclusions with Brown by means of a lawsuit. It is proved and not disputed that the defendant had, subsequent to June 30th, 1886, consulted with counsel relative to the article he was making or proposed to make, and stated or showed the difference between its manufacture and the article as described in the agreement, and that such counsel had advised him that the article he proposed to manufacture or was then manufacturing, was not an infringement on Brown's rights.

On the subject of the termination of the agreement, Brown was called and testified that the agreement was terminated in 1886 and that it was never renewed, and that the letter of June 19th which he wrote was the notice to the partners of the termination of the contract. The witness also said that all matters were settled up between them up to that time and under the agreement as he believed, and that after that he made no new agreement with the partners, and he did not extend the old contract at all ; he made no claim for anything in this action prior to June 30th, 1886 ; at that time he and the partners had not been able to agree about renewing the contract, so it had never been renewed.

Brown further said that the partners never made any quarterly reports subsequent to the one sent him the last of June or forepart of July ; he thought he called on them for a report in the fall of 1886, but that so far as he knew, all matters up to the termination of the contract had been settled either by notes or payments in cash. From the fall of 1886 he had never made a demand for a report or for any payment or royalties under the agreement, and none had been made until just before the commencement of this action. This in substance is the uncontradicted evidence of the parties to the agreement. It is seen they both unite in stating it was terminated in June, 1886, and that it never was renewed.

A motion for a non-suit was made upon the ground that plaintiff had shown no liability to pay royalties for the time mentioned in the complaint, which was subsequent to June, 1886. This was denied, and requests to find were made and

exceptions to their refusal and to the findings as made were duly taken, so that the question is fairly presented whether on this evidence the defendant was bound to pay royalties according to the provisions of an agreement during a time subsequent to the period when the agreement itself, according to the evidence of both parties to it, had terminated.

I think the plaintiff failed to make out a case and that the judgment ought, therefore, to be reversed.

First, it is to be noted that by the terms of the agreement of 1885, it was to expire in May, 1886, and that its renewal depended upon the mutual agreement of the parties and not as theretofore upon the election of the partners to renew it upon giving notice of the time for which they desired such renewal sixty days before its expiration.

There was to be a meeting and agreement of minds before the renewal was to be effected. The evidence shows conclusively and without the least contradiction that no such agreement for a renewal in terms took place, and that no renewal was thus effected. It is true that during the negotiations in May and early June, 1886, the partners manufactured, but the whole thing was regarded by both sides as dead and completely gone after the letter of June 19th was written, and for the articles manufactured or in process of manufacture at that time and up to June 30th settlement was made between the parties, and after that time both parties swear that they regarded the agreement as at an end. As a further evidence of such fact the partners proposed to and did manufacture the same kind of an article but differing slightly in its make up, and they consulted counsel whether it would be an infringement on the Brown patent, and they received a negative answer and so continued to manufacture it with that difference, and never since June, 1886, did the defendant, as he swears, manufacture a single machine covered by the Brown patent. The referee finds that in truth the article manufactured by defendant since that date was substantially like the one mentioned in the agreement. Whether it was or not is not important, because by the uncontradicted evidence

it is shown that the defendant was not assuming or claiming to manufacture under the agreement, but, on the contrary, was openly and persistently manufacturing an article which he claimed a right to manufacture, not arising out of any contract and not depending upon any agreement. And when Brown afterwards tells defendant that his manufacture is an infringement on his, Brown's, rights, defendant answers him in substance that if he think so he had better commence an action to prevent such infringement and thus contest the point at once. This evidence of Brown itself as to a conversation between defendant and Brown, which occurred five years subsequent to the termination of the agreement, is uncontradicted and shows clearly the entire absence of any pretense by either party at that time as to the continued existence of that agreement or that the manufacture by defendant had been continued under or by virtue of such agreement. Brown's own evidence shows that upon this occasion he made no claim that defendant was liable under the agreement for royalties, but only that he was guilty of an infringement upon his patent by reason of manufacturing in the way he had been doing. This would have been impossible if the agreement had been in existence and defendant had continued manufacturing under it. Evidently there was then no thought on either side that the agreement had been in force during this period. Both parties then knew and recognized the fact that they had failed to extend or renew it, and that they had both treated it since June, 1886, as at an end, and in addition to this evidence they both so swore on the trial.

The ground of the liability is, however, stated to rest in the fact that the parties by their action did tacitly agree to renew the contract; that notwithstanding the failure to renew the agreement in terms, it was in reality substantially renewed by the failure of Brown to do anything after the writing of the letter and by the actual manufacture of substantially the same article by the defendant, who thus used the right given him by the agreement which was acquiesced in by Brown, because he did nothing to prevent it, and he thus waived the effect of

the notice he had once given. By these various acts and omissions it is said the parties tacitly but effectually renewed the agreement, although for how long a time the evidence wholly fails to show. This failure of Brown to take further action subsequent to his letter of June 19 is made to operate as a waiver of his notice contained in such letter, and this waiver by Brown, together with a manufacture of the article on the other side, bring about a renewal which neither party then anticipated. We find a difficulty in implying a renewal which is opposed to the words and acts of the parties. It is plain that a waiver of the notice could not effect the renewal of the agreement. That required the affirmative consent or act of both parties, and without it the old agreement remained useless and non-existent. Neither could the manufacture by the defendant under the conceded facts be regarded as an implied recognition of the binding force of the agreement or as an implied renewal thereof. The act of manufacturing is explained fully by defendant and that explanation is uncontradicted. It was not in any degree a recognition of the existence of the agreement, nor could such recognition or renewal be thereby implied, but, on the contrary, the evidence shows without dispute that the manufacture was under a claim of right not resting on contract and outside of the agreement and without reference to it. It seems to us that to imply a renewal of the agreement on this evidence results in a decision which is so at war with the acts and words of the parties and with the undisputed facts in the case as to rest practically upon no evidence.

Brown, after the giving of the notice and the acquiescence of all parties in the fact that the agreement was not renewed, was not bound to do anything further, nor could the fact of his mere silence while the parties manufactured an article be regarded as a consent to the renewal of the agreement. The important and material fact still remains that it was not the giving of the notice in the letter of June 19th which terminated an otherwise existing agreement. The agreement had terminated already by its own specific terms, and it required

the mutual consent and agreement of both parties to renew it. Their acts already alluded to cannot in reason or justice as we think be held to renew an agreement of this nature.

The learned referee was controlled, as it would seem from his opinion, in the disposition of the case by what he regarded as the binding authority of the case of *Union Manufacturing Co.* v. *Lounsbury* (41 N. Y. 363), but with unfeigned respect we think he carries the doctrine too far.

After an examination of it, we think that case differs from this in one or two important particulars. The defendants in the case cited were manufacturers under license from the plaintiff and upon conditions stated in the agreement, a violation of which was to forfeit their right to manufacture. The defendants during its existence violated one of its conditions by making a kind of cloth which they had agreed not to manufacture. The plaintiff then notified defendants that on that account they were forbidden from using or exercising the right to manufacture for any purpose whatever. The plaintiff took no other step towards rescinding the agreement, and the defendants continued to manufacture the cloth which the agreement permitted them to manufacture and made no claim so far as the case shows of any right to manufacture the cloth outside of the agreement, but they subsequently refused to pay the price agreed upon, which accrued after the day of notification. Plaintiff, in an action brought upon the agreement, was permitted to recover. It will be noticed that the agreement was in force at the time the plaintiff served the notice. The notice was nothing more than a statement by the plaintiff that he meant to avail himself of and to enforce the forfeiture provided by the agreement. The choice rested with him alone, and when he stated an intention to exercise the right, he was not thereby compelled to do so or to follow it up by resorting to legal measures if the defendants continued to manufacture, notwithstanding his notice. Obviously, they had no right to manufacture and claimed none outside of the agreement. If they did thus continue to manufacture, there is no reason why the plaintiff might not waive his right

of forfeiture or rescission and sue for the price coming to him under the agreement. The fact that he does sue shows that he does waive the right existing in him alone to terminate the contract on account of the violation of one of its conditions by the defendants. If he waive the right to terminate the contract, surely the defendants could not be heard to say that nevertheless they elected to terminate it or to hold him to its termination on account of his written notice, although that notice was based on their own violation of one of the provisions of such contract. Here is a totally different case. This agreement terminated by its own language in May, 1886. The manufacture of the article by defendant pending negotiations and up to June 30, was settled for and ended. To renew the agreement some mutual and binding agreement to renew must be shown or an implied renewal must be based upon the words or conduct of the parties. The parties have shown no written renewal and their words and acts we have already seen are wholly opposed to an implied renewal.

The plaintiff has, therefore, failed to show an agreement, and without an agreement to pay royalties this judgment cannot be sustained, and it must, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed. _____