## AMERICAN ST. CAR ADVERTISING CO. v. JONES et al.

(Circuit Court of Appeals, Second Circuit. May 24, 1905.)

### No. 42.

PATENTS—LICENSES—REVOCATION—ROYALTIES.

A patentee of certain street car advertising racks wrote defendants a letter demanding payment of $3 a car for alleged infringement in the building of such racks in certain cars, with an offer to make arrangements at the same rate for cars to be subsequently built. Defendants paid such rate for cars in question, and in answer to a letter from the patentee they sent a check for other cars at the rate of $2 per car. The patentee accepted the same in payment for cars at the rate of $3 and stated that he could not make the rate less and that it was not to his interest to have the racks built into the cars. Shortly thereafter he wrote another letter, demanding a statement of all cars built with such racks therein, and notified defendant to discontinue building such racks, except at the rate of $5 per car, to which letter defendants did not reply. *Held*, that the letters prior to the last did not amount to an irrevocable license for the life of the patent, and hence defendant, after receiving the letter of revocation, was relieved from further liability to account for or pay royalties.

Appeal from the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 122 Fed. 803.

This cause is brought here by appeal from a judgment in favor of complainant for $6,440.77 for royalties held to be due from defendants for advertising racks placed in cars manufactured by them, by virtue of a parol license under patent No. 380,696, granted to Isaac H. Randall April 10, 1888.

Charles G. Coe and Edmund Wetmore, for appellants.

Edward S. Beach, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The assignments of error raise the questions as to the character of the alleged contract of license, the term of its duration, its revocation, and the eviction of defendants by complainant's assignor, an adjudication adverse to the patent, res adjudicata in favor of defendants, laches of complainant and its assignor, and invalidity of the patent, or such a limitation of its claims as would exclude the so-called "built in racks" used by defendants.

The view we have taken as to the defense of revocation and eviction dispenses with the necessity of considering the other defenses.

The bill alleges that on or about November 17, 1888, Randall, the

patentee and complainant's assignor, licensed defendants to make cars containing the patented advertising racks. It appears from the correspondence between the parties that prior to that date defendants had placed said advertising racks in 20 cars ordered by a street railway company, under the impression that said company had purchased the right to use the same, and that Randall notified defendants of his patent, and threatened to attach the cars unless defendants settled for said racks, and that, in response to said notice, defendants explained the situation and asked Randall for a copy of his patent, and for a statement of the arrangement which he would be willing to make with defendants for its use.

On November 14, 1888, Randall wrote defendants a letter, the material portion of which is as follows:

"In regard to them you have already built, if you will send me a check by return mail, you can do so at the rate of 3 dollars per car, this are my lowest figures, and should you hereafter want to make arrangements to use this invention you can figure on the same rate per car."

To this letter defendants replied as follows, on November 17th, the date alleged in the complaint as that of the making of the contract:

"West Troy, N. Y., Nov. 17, 1888.

"I. H. Randall, Esq., Boston, Mass.—Dear Sir: Your favor, 14th duly received. Enclosed we hand you our check for Sixty Dollars ($60.00) in settlement for Royalty your patent card racks in twenty (20) cars lately built by us for West End Street Railway Co., Boston, Mass. Please acknowledge receipt and oblige,
"Yours truly, J. H. Jones' Sons, Agts.,
"McLeese."

On August 6, 1889, Randall wrote defendants as follows:

"Boston, Aug. 6, 1889.

"J. M. Jones & Co., Agt., West Troy, N. Y.—Gents: I have got quite a sum of money to make out the 10 of this month and if you could send me a check it would help me out,
"Respt. yours, I. H. Randall."

On August 8, 1889, defendants wrote that they had fitted 161 cars with the racks, and they sent Randall a "check for $322.00 in full" therefor, and added as follows:

"We hope that on account of the large number of cars we have fitted with racks and the favor we have shown towards them that the inclosed check will be satisfactory to you."

On August 24, 1889, Randall acknowledged receipt of check for $322, for 107½ cars, stated that he could hardly make the rate less than that for "the first lot, which was $3 per car," and that it was not for his interest to have them built in the cars, and concluded with the following statement:

"So you will see that 3 dollars per car is as low as I can take and I would rather not sell them that way. Hoping you will be satisfied with I remain,
"I. H. Randall."

On January 4, 1890, Randall wrote defendants as follows:

"Gents: Please send statement of all cars you have built with advertising racks in up to date and on and after this date you will discontinue building said racks in cars without authority by me to do so under penalty of the law.

"Respt. yours,                                                    I. H. Randall.

"P. S.—Three dollars is my lowest price and hereafter should I conclude to allow said racks built in cars in my price will be five dollars per car.

"I. H. Randall."

The defendants had not fitted any cars with the patented racks since the last settlement. They therefore had nothing to report, and they made no reply to this letter. It does not appear that any further claim was made upon defendants in regard to this matter until June 16, 1900, when counsel for complainant made a demand for a statement of cars built by defendants in which they had used the patented rack, and a check for all royalties due, at the rate of $3 per car. The defendants denied all liability, and thereupon complainant brought this suit, praying for an accounting and the cancellation of the license, and that defendants might be compelled to pay over royalties on all racks placed in their cars since August 8, 1889. In 1896 complainant had brought suit in the First circuit against the Newton Street Railway Company for infringement of the patent here in suit, by reason of the use of cars manufactured by these defendants and by them furnished with the patented racks. It appears from the evidence that complainant must have known that said racks were furnished by the defendants. The Court of Appeals, reversing the court below, held that said racks did not infringe the patent in suit, and ordered the bill dismissed. Newton Street Railway Co. v. American Street Car Advertising Co., 88 Fed. 795, 32 C. C. A. 122. All the racks furnished by defendants since February, 1890, with the exception of 27, were of the same pattern as the racks in question in the Newton Street Railway suit.

It is contended by complainant that the letters of November 14th and 17th constituted a contract between the parties unlimited in duration, and therefore continuing until the patent expired or the license was forfeited, and that the final letter of January 4th had no legal effect on the license, because neither party could terminate it without the consent of the other. It is doubtful whether said letters could be so construed. The only acceptance on the part of defendants was of the offer to settle for the 20 cars already built and for which defendants paid the royalty. There was no offer of an exclusive or continuing license, but merely of a certain rate per car, on which defendants could count in case they should wish to make arrangements to use Randall's invention. Any future rights which complainant's assignor might acquire were to be predicated, therefore, upon an acceptance by defendants of said offer. If there might otherwise have been any doubt on this question, the practical interpretation of the parties is decisive as to their understanding.

That complainant's assignor did not consider that defendants had accepted said offer is shown by his subsequent acceptance of $2 per car for racks thereafter furnished, instead of $3, which he had named, without any assertion of right to claim the $3 per car, by his statement that "it is not for my interest to have them built in the cars

* * * and I would rather not sell them that way," by his final letter of January 4, 1890, and by the Newton Street Railway suit, in which it was asserted that the racks used in said cars were not licensed under the patent in suit.

That defendants did not understand that they had entered into any contract for future rights to use the racks is shown by their failure to accept complainant's offer to make arrangements at the rate of $3, by their letter inclosing check at the rate of $2 per car in full for cars fitted with racks, after said offer, and by their discontinuance of the use of the racks after complainant's statement that he would rather not to sell the right to use built in racks, but that $3 per car was as low as he could take.

Complainant's final letter, therefore, of January 4th, ordering defendants to "discontinue building said racks in cars without authority by me to do so under penalty of the law," coupled with the statement that, if he should "conclude to allow said racks built in cars, my price will be five dollars per car," was in entire accord with the understanding of both parties either that there had been no contract for a future license, or that, even if any such license might have been claimed, it was one terminable at the will of complainant's assignor, and the statements in his letter were acquiesced in by defendants as constituting a complete revocation of whatever rights or license they might otherwise have claimed. The contract, if any, was thereby rescinded by mutual agreement. Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357. Said revocation constituted an eviction, by reason whereof defendants were relieved of all further liability to account or pay royalties. "A license implies that the licensee shall not be evicted from its enjoyment, and such an eviction is a defense to a suit for royalties accruing after it occurred." Walker on Patents, 266. White v. Lee (C. C.) 14 Fed. 789; Ross v. Fuller & Warren Co. (C. C.) 105 Fed. 510.

It is unnecessary to consider what rights complainant or its assignor might have had if the letter of complainant's assignor could have been construed as an offer of an exclusive license which should continue during the life of the patent and had been accepted by defendants prior to its revocation. A contract cannot be predicated upon an offer which is modified or withdrawn before an unconditional acceptance. Schenectady Stove Co. v. Holbrook, 101 N. Y. 45, 4 N. E. 4. Here the minds of the parties had not met, no arrangements had been made by defendants, and both parties understood that the proposed offer for future arrangements was withdrawn by complainant's assignor before its acceptance by defendants.

The facts in the case at bar are strikingly like those of Denise v. Swett, 142 N. Y. 602, 37 N. E. 627. There a firm entered into an agreement with a patentee for a license to manufacture a patented article for a limited time, with a privilege of renewal of the license. Afterwards the patentee offered to renew the license upon certain conditions, which the firm did not accept, and thereupon the patentee notified the firm that the license was revoked. The firm, however, continued to manufacture articles claimed to infringe upon the patent,

denying its liability therefor. The court held that inasmuch as the renewal of the contract depended upon the mutual agreement of the parties, and as there was no agreement of minds for such renewal, the firm was not liable for the payment of royalties, but that the subsequent manufacture was under a claim of right, and did not rest in any way upon the prior contract.

The judgment is reversed, with costs, and cause is remanded to the Circuit Court, with instructions to dismiss the bill.