CHADELOID CHEMICAL CO. v. JOHNSON et al.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

No. 1,897.

1. PATENTS (§ 283*)—SUIT FOR INFRINGEMENT—EQUITY JURISDICTION.

A suit in equity will not lie for a past infringement of a patent, which has ceased, and where defendant does not threaten nor intend to again infringe. which fact is known to the complainant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–452; Dec. Dig. § 283.*]

2. PATENTS. (§ 280*)—SUITS FOR INFRINGEMENT—GROUNDS—BREACH OF CONTRACT BY LICENSEE.

A suit in equity for infringement of a patent cannot be maintained by a licensor against a licensee because of the breach by the latter of conditions of the contract requiring him to make stated reports, pay royalties, or submit his books to inspection, which are purely matters of contract, and not of patent law.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 439; Dec. Dig. § 280.*]

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Arthur L. Sanborn, Judge.

Suit in equity by the Chadeloid Chemical Company against Samuel C. Johnson and Herbert T. Johnson, doing business under the copartnership name of S. C. Johnson & Son. Decree for defendants, and complainant appeals. Affirmed.

Appellant filed its bill to enjoin appellees from infringing patent No. 714888, issued December 2, 1902, to Ellis, for a paint and varnish remover. The bill alleges that appellees are licensees of appellant, and that infringement of the patent was committed by appellees selling at less than the prices fixed in the license, omitting to put the patent and license marks and notices on the cans containing the remover, failing to pay royalties, refusing to make quarterly reports of amounts of sales and prices, and excluding appellant's accountant.

Attached to the bill is a copy of the license agreement. It begins with the statement that "the licensor, in consideration of the covenants hereinafter contained and upon condition that the licensee keep this agreement, hereby grants to said licensee a license to manufacture, use, and sell under [said Ellis patent] for the term of said patent unless sooner terminated as hereinafter provided." Then follow the covenants, of the violation of which appellant complains as above stated, and a provision respecting liquidated damages. In conclusion, the license agreement provides that "in case the licensee fail, for a period of 30 days after the same are due, to deliver any statement or to pay royalty as above provided for together with interest at 6 per cent. per annum from the date when it was due, or in case the licensee willfully and persistently violate the agreement as to the minimum prices at which remover made hereunder is to be sold, or in case the licensee violate or fail to observe any of the other terms, conditions, or covenants of this agreement, the licensor may at its election, without precluding any other right or remedy to which it may be entitled hereunder, and in particular without precluding its right to liquidated damages as herein provided, terminate all further rights of the licensee hereunder by sending written notice to that effect to the last known address of the licensee; but such termination of the right of the licensee hereunder shall not in any way release the licensee from any of its covenants or obligations hereunder."

In their amended answer appellees denied that they had ever sold any of the patented paint and varnish remover for less than the prices prescribed in the license agreement, averred that they had always attached the notices called for by the license agreement, except for a short time in 1909, at the end of which they again attached the notices, and since then have never threatened and do not intend to send out any remover without the notices attached to the containers, as appellant "well knew at the time of the bringing of this suit" in February, 1910, but were silent respecting their alleged failure to pay royalties, their refusal to make quarterly reports, and their exclusion of appellant's accountant.

Appellant brought on the cause for hearing upon the bill and answer. Thereupon the trial court entered a decree dismissing the bill for want of equity. And this appeal resulted.

Frederick S. Duncan, of New York City, for appellant.

Irving A. Fish, of Milwaukee, Wis., and Victor Elting, of Chicago, Ill., for appellees.

Before BAKER and SEAMAN, Circuit Judges, and ANDERSON, District Judge.

BAKER, Circuit Judge (after stating the facts as above). Since, on a hearing on bill and answer, only those averments of the bill are to be deemed proven that are not destroyed by taking the answer as true, appellees never trespassed upon appellant's reservation of price control.

[1] For appellee's invasion of appellant's manufacturing control in 1909, by omitting to put notices of the patent and of the price restriction upon the containers, an action at law for damages would lie; but, injunctive relief being aimed at the prevention of continuing or threatened trespasses, and appellees having ceased to trespass and having no intention and making no threats to resume, as appellant knew before suing, a bill in equity would not be justified. Kenicott Co. v. Bain, 185 Fed. 520, 107 C. C. A. 626.

[2] So the only question is whether a bill **for injunction** to prevent infringement of a patent can be founded on the defendant's violation of covenants, in a license agreement, to pay royalties, to make reports, and to submit his books to the complainant's accountant.

There should be no difficulty in perceiving the difference between the subject-matter of a grant and the consideration which the grantee pays or promises in money or acts. Here the subject-matter of the license is described by first bounding the whole territory of the patent monopoly and then excepting the portions thereof which appellant reserved. No reservation respecting use was made. One reservation concerns the method of manufacture—putting on the notices. Another has to do with the terms of sale—the price restriction. None other is found.

The confusion that inheres in appellant's bill and in its argument on the sufficiency thereof may be resolved by considering the remedies appellant would have for violations of either or both of the aforesaid restrictions. One remedy would be under contract law. A suit could be based on appellees' covenants to obey the making and selling restrictions. The other would be under patent law. A straight, unadorned bill for infringement could be filed, and appellees put to bringing forward the license as a defense, whereupon the question would be: Was appellees' entry upon a granted or upon a reserved portion of the patent monopoly? Or appellant, in its bill, could anticipate the defense of license, and thereupon the question would be the same. As was pointed out long ago in Victor Co. v. The Fair, 123 Fed. 424, 61 C. C. A. 58:

"Whether or not appellee covenanted to be bound (by the price restrictions) * * * is immaterial in this case, for the suit is not upon a promise to

keep out of the reserved portion of the monopoly, but is for the trespass in entering without permission."[1]

So, in this infringement suit, if appellant could not base its cause of action upon appellees' covenants to keep out of the reservations respecting manufacture and sale, much less could it charge infringement by reason of appellee's violation of covenants which have nothing to do with determining the question of trespass upon the domain of the patentee. Appellant, in seeking charges of infringement of the patent, has been looking at the wrong end of the license contract. Instead of scrutinizing the subject-matter of the grant—the metes and bounds of the license to manufacture, use and sell embodiments of the invention—appellant has had its eye fixed upon the considerations on account of which the license was granted. This is of no avail in an infringement suit.

Appellant advances a theory that, because the considerations are stated, "in consideration of the covenants hereinafter contained and upon condition that the licensee keep this agreement," the keeping of the covenants to pay royalties, make reports, and open the books to an accountant, is a condition precedent to the continued existence of the license. If the license came into existence, and appellant concedes it did, it continues in existence until a forfeiture is effected. Comptograph Co. v. Burroughs Adding Mach. Co. (C. C.) 175 Fed. 787, and cases cited. The agreement gives appellant the right to enforce a forfeiture for breaches, but contains no provision that breaches shall be self-operative as forfeitures—even if such a provision could have any legal effect to that end. But, more important, if the covenants to pay royalties, make reports, and open the books, are matters of contract law, no words of the parties can make them matters of patent law. Nor can covenants that in their nature are conditions subsequent be transmuted into conditions precedent by agreement of parties.

The decree is affirmed.

---

[1] See, also, Henry v. Dick Co., 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645; Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357; Consolidated Middlings Purifier v. Wolf (C. C.) 28 Fed. 814; Washburn Mfg. Co. v. Cincinnati Barb Wire Co. (C. C.) 42 Fed. 675; Perry v. Noyes (C. C.) 96 Fed. 233; Allen v. Consolidated Fruit Jar Co. (C. C.) 145 Fed. 948.

