LUTEN v. BEARCE et al.

(District Court, D. Maine. December 22, 1914.)

No. 680.

1. PATENTS ☞202—SUIT FOR INFRINGEMENT—ESTOPPEL TO MAINTAIN—IMPLIED LICENSE.

A corporation of which complainant was president entered into a contract with defendants by which they were authorized to use as contractors in the construction of a bridge certain inventions covered by patents owned by complainant, for which they were to pay as a license fee ten per cent. of the contract price of the bridge. The corporation was also to furnish steel work for the bridge, and a controversy arose over that part of the contract. By agreement the time for payment of the license fee was extended until the bridge should be completed and its stability demonstrated. Complainant was fully cognizant of the terms of the contract and conducted some of the negotiations therefor. *Held*, that he was bound by the contract, and could not ignore it and maintain

a suit for infringement of the patents before the time for payment of the license fee as extended had expired.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. ☞202.]

2. PATENTS ☞209—IMPLIED LICENSE—ESTOPPEL.

No particular form of words is necessary to constitute a license to use a patented invention, and a license may be implied on principles based on the doctrine of acquiescence or estoppel.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 300, 303; Dec. Dig. ☞209.]

In Equity. Suit by Daniel B. Luten against George B. Bearce and John D. Clifford. On final hearing. Decree for defendants.

Jones, Addington, Ames & Seibold, of Chicago, Ill., for complainant.

McGillicuddy & Morey, of Lewiston, Me., for defendants.

HALE, District Judge. This suit in equity is brought to obtain an injunction against the defendants by reason of their infringement of certain letters patent. The bill alleges the infringement of several patents relating to the art of bridge construction, arch construction, masonry, and concrete structures. It contains the usual allegations that the complainant is the owner of the several enumerated patents, and that they are of great commercial value. It then proceeds to set forth that against the will of the complainant, in violation of his rights, and in infringement of his letters patent, the defendants submitted a bid for the erection of a certain bridge at Dover and Foxcroft, in the state of Maine, by plans and specifications embodying the patented inventions of the complainant, and, after being awarded the contract, proceeded to erect the bridge, and that the same is in process of construction in accordance with the improvements described in the letters patent. Among other things the complainant further alleges that he fears that, unless the defendants are restrained by a writ of injunction, they will complete the erection of the bridge, and will cause irreparable injury to the complainant. The complainant prays, among other things that the defendants may be decreed to account for profits and damages, and that they may be restrained both temporarily and permanently by an injunction of the court from using or selling the improvements described in the letters patent; that there may be a decree that the patents are valid, and that the complainant is the lawful owner of the same; that the construction, use, or sale by the defendants of structures embodying the invention may be decreed to be an infringement of the patents; and that the court may cause the damages to be assessed, and may increase the actual damages to three times the amount of such assessment, by reason of the circumstances of the aggravated infringement by the defendants.

The answer denies that the complainant is the owner of the patents, that there has been any infringement, and that there is any necessity for an injunction; also that the defendants will receive profits from any use of the invention. By way of defense it sets forth that defendants entered into a contract with the National Bridge Com-

pany, a corporation having its place of business at Indianapolis, Ind.; that the complainant is the president of the Bridge Company; that this company gave permission to the defendants to erect a bridge according to certain plans furnished by it; that such plans included and incorporated the several patents set forth in the bill; that by the terms of the contract the Bridge Company agreed with the defendants to protect them against the claims of infringement of any patent granted or applied for, or of any device used in the structure, and to furnish certain "shopwork" in the steel construction to be delivered at Foxcroft, Me. The answer further discloses a conflict between the Bridge Company and the defendants with relation to the matter of "shopwork," and in relation to the payments to be made. It sets up that the National Bridge Company modified the terms of the contract by several changes, and finally by a provision that the final payment should be deferred until the defendants were satisfied that the bridge and its walls would stand up, and that by its modification of the contract, the final payment of $920 by the defendants to the Bridge Company was not due at the time this equity suit was brought. The answer enters upon the contention between the defendants and the Bridge Company as to the terms of the payments and other matters which it is not necessary to consider here. The defendants further and finally allege in their answer that the complainant was president of the company, knew of the contract with the Bridge Company, and approved it; that he was actually present and knew the different elements of the contract, and the whole conduct of business with the Bridge Company; and that the defendants have fully performed all they were required to do under the contract. The answer substantially sets up that by acquiescence in the use of the patents under the contract referred to, the complainant has given a license to the defendants to use the inventions under the contract referred to; and that the bill presents no equity.

[1] The case shows that a contract was entered into between the defendants as contractors and the town of Foxcroft covering the erection of a bridge over the Piscataquis river between Dover and Foxcroft, and that it included a set of specifications furnished by the National Bridge Company, agreeing to furnish the plans and steel, and a license to use certain patents owned or controlled by the Bridge Company under specified conditions. The evidence makes it clear that the bridge was to be erected under plans and specifications covered by letters patent owned or controlled by the Bridge Company; that the company was not to bid on the work, but was to furnish a license to the defendants, the contractors, to erect this bridge for 10 per cent. of the contract price. The contractors were to acquire no license under the patents owned or controlled by the Bridge Company through any act of the company, or its agents, until the specified amount of the license fee had been paid to the Bridge Company. It appears that, should any conditions prevent the prosecution of the work to completion in the time named, or should its prosecution be delayed by the owner of the patents, or by other causes beyond the control of the contractors, then an extension of time should be allowed

equivalent to the delay. It appears, too, that payments were to be made to the contractors according to monthly estimates on work done and materials delivered at the bridge site, which estimates should become due the following month, except that 10 per cent. was to be reserved by the owner until the bridge was completed, when the balance remaining unpaid on the bridge should become due and payable. As the work of construction proceeded, a controversy arose between the parties relating to "shopwork" on the steel furnished. It is unnecessary to discuss what this controversy was; for the issues in this patent case do not enable the court to settle the contentions between the parties. In the conduct of business between the owners of the patents and the contractors, some of the letters of the Bridge Company were signed by their president, Daniel B. Luten, the complainant in this case; others were signed by W. M. Denman, who alleged himself to be the representative of the company, and who was acting as agent for the Bridge Company, and for the complainant, as the evidence clearly shows. Extensions of time of payment under the contract were made from time to time; finally Mr. Denman, acting for the Bridge Company and for the complainant, instructed the defendants, the contractors, to send him a check in final payment "when you are satisfied that the bridge is going to stand up." The testimony further shows that the bridge was not accepted, and that up to December 18, 1911, it was not settled whether the bridge would stand up or not. This suit was brought on November 13, 1911. The testimony induces me to find that the complainant was cognizant of the conduct of business between the defendants and the Bridge Company, and of the negotiations entered into by Denman with the defendants. With the full knowledge of the complainant, then, the Bridge Company was furnishing patents under which the defendants, the contractors, were building a bridge. The conduct of all negotiations between the parties was under the contract and specifications to which reference has been made. The time of final payment of the license fee was extended by agreement of the parties. Whatever the controversy was between the parties, it arose under the contract. It was clearly within the contemplation of this contract that the defendants should build the bridge under the patents enumerated in the bill. It would be grossly inequitable to permit the Bridge Company to ignore its contract with the defendants, and treat them as infringers, when both parties were acting under it, and the controversy between them related to their contract rights. If either party regarded the contract as broken, recourse could be had to the courts to enforce it, or to recover for its violation. The testimony makes it clear that Luten, the complainant, as president of the Bridge Company, was himself conducting many of the negotiations between the defendants and the Bridge Company. He is charged with knowledge that the contractors were proceeding, and were to proceed, under the contract until they should be satisfied that the bridge was going to stand up, and that until then they were not to make the final payments. He brought this suit before that time had elapsed. It appears by a letter from Mr. Denman that he, representing the Bridge Company and this complain-

ant, indicated to the defendants his intention to claim recourse to the federal courts, and that, if the defendants refused to pay in accordance with what he thought to be the rights of the Bridge Company, "Mr. Luten would enter suit for perpetual injunction, royalty, and damages," etc. The case shows that this suit was brought substantially in pursuance of the indication in Mr. Denman's letter. On a careful examination of the whole testimony, I am constrained to come to the conclusion that the relief prayed for in the bill cannot be decreed on the facts disclosed in the testimony.

[2] The allegations in the bill relating to the infringement of the patents are not sustained. The whole testimony leads me to conclude that the defendants had an implied license to the use of the patents in the way they were using them under the contract, and that they acquired such license by the knowledge and acquiescence of the complainant. No form of words is necessary to constitute a license or permission to use patents. The federal courts have repeatedly applied the law relating to an implied license, on principles based upon the doctrine of acquiescence or estoppel. Walker on Patents (4th Ed., 1904) § 312; Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357; Keyes v. Eureka Mining Co., 158 U. S. 153, 15 Sup. Ct. 772, 39 L. Ed. 929; Seibert Cylinder Oil Cup Co. v. Detroit Lubricator Co. (C. C.) 34 Fed. 216; Blanchard v. Sprague, 1 Cliff. 288, 298, Fed. Cas. No. 1,516; Am. Graphophone Co. v. Victor Talking Machine Co., 188 Fed. 428, 429, 110 C. C. A. 308; Chadeloid Chemical Co. v. Johnson, 203 Fed. 993, 994, 122 C. C. A. 293.

In the case at bar, there is no denial of the validity of complainant's patents, nor of his right to the monopoly which they give him. The conduct of the parties, as shown by the evidence, discloses the intention of all concerned in the transaction that the patents should be used by the defendants until the bridge was fully constructed. The time of final payment of the amount due by the defendants had clearly been extended until the bridge had been fully constructed, and the terms of the contract had been carried out. The complainant had clearly acquiesced in the acts of the Bridge Company in extending the time of final payment. There is no more reason for allowing him to ignore the terms of the contract, and the rights acquired under it, than there is for allowing the Bridge Company itself to ignore those conditions. The evidence in the case shows that the complainant has waived his rights to invoke the provision of the contract negativing the acquirement of a license by any act of the company or its agents until the full amount had been paid to the Bridge Company. It is evident that all parties understood that the defendants should have the use of the patents until the bridge should be built. After a careful consideration of all the testimony, I find that, at the time this bill was brought, the complainant had no right to treat the defendants as infringers of the patents in suit.

The bill is dismissed, with costs to the defendants.