## DARE *v.* BOYLSTON.

*(Circuit Court, S. D. New York.   December 31, 1880.)*

1. LICENSE—ROYALTIES—TIME OF PAYMENT.

    An agreement for an exclusive license, executed January 7, 1878, stipulated, *inter alia*, that the payments of royalty should " be made quarterly ; that is to say, on the first day of January, April, July, and October, or within 10 days thereafter of each and every year " during the continuance of the agreement.  *Held*, that the first payment of royalty became due on the first day of April, 1878.

2. SAME—FORFEITURE.

    It was further agreed by the licensee that " if he should fail to well and truly make the payments above referred to, or to execute or fulfil any of the other conditions " contained in the agreement, that the same should be null and void.  *Held*, that the failure of the licensee to render a statement or make a payment on the first day of April, 1878, or within 10 days thereafter, did not, *ipso facto*, work a forfeiture of his rights under the agreement.

3. SAME—PAYMENT OF ROYALTIES—DUTY OF LICENSOR.

    *Held, further*, under the circumstances of the case, and in the absence of a stipulation as to the place of payment, that it was the duty

of the licensor to apply to the licensee for an account and a payment, and that he could not in the meantime, without the assent of the licensee, relicense the patent to third parties.

4. SAME—SUBSEQUENT LICENSE.

.*Held, further,* that a subsequent license was void where the parties had notice of the prior agreement, and the same was issued without the consent of the original licensee, and after a complete tender of the royalties then due.

5. LETTERS' PATENT — IMPROVEMENT IN CANOPY TOPS FOR CHILDREN'S CARRIAGES.

Letters patent for an "improvement in canopy tops for children's carriages," granted Calvin E. Fosburgh, May 29, 1877, are not void for want of utility.—[ED.

*A. v. Briesen,* for plaintiff.

*Edwin H. Brown,* for defendant.

BLATCHFORD, C. J.    Letters patent for an "improvement in canopy-tops for children's carriages" were granted to Calvin E. Fosburgh, May 29, 1877. On the seventh of January, 1878, an agreement in writing, under seal, was executed by and between Fosburgh and Charles W. F. Dare, the plaintiff, and recorded in the patent-office January 9, 1878, whereby Fosburgh granted to Dare, for and in consideration of the covenants therein contained, to be kept by Dare, the sole and exclusive right, license, and privilege to manufacture, use, and sell canopy-tops, embodying the invention covered by said patent, for the full unexpired term of the same, with the exclusive right to grant sublicenses to other parties, under said patent.    As a consideration, Dare thereby agreed to pay to Fosburgh, as a royalty or patent fee, 25 cents for each canopy-top and child's carriage provided with the canopy-top made and sold by or on behalf of, or with the license or consent of, Dare, containing said invention; payments of royalty "to be made quarterly,—that is to say, on the first day of January, April, July, and October, or within ten days thereafter, of each and every year" during the continuance of the agreement,—for all the said articles made and sold by or on behalf of, or with the consent of, Dare, "during the three months preceding the respective dates of payment;" each payment to be accompanied by a statement, under oath, of Dare, setting

forth the number of said articles made, and the number sold by or on behalf of, or with the consent of, Dare, during the three months preceding each of said accounts and dates of payment. Dare also agreed thereby to keep proper books of account of the manufacture and sale, and to use his best endeavors to introduce the article into the market, and make it known to the public, and create a demand for it. Fosburgh agreed thereby to execute the necessary papers for re-issuing the patent, if, and as soon as, Dare should desire such re-issue; the expense of the re-issue, if not more than $60, to be deducted from the royalty that might be due to Fosburgh after the re-issue. It was further thereby agreed by Dare that "if he should fail to well and truly make the payments above referred to, or to execute or fulfil any of the other conditions hereinabove contained, then and in that case this agreement and license shall become null and void."

Application for a re-issue of the patent was made January 18, 1878, on a specification signed by Fosburgh January 7, 1878, and a re-issue was granted to Fosburgh, No. 8,074, February 5, 1878. The plaintiff now brings suit against the defendant on the re-issue, alleging infringement. The answer sets up that any right granted to the plaintiff became null and void before this suit was brought, because the grant was made subject to conditions which have not been fulfilled by the plaintiff, and that the defendant has acquired, by an instrument in writing from Fosburgh, made April 7, 1878, the right to make and use and sell articles containing said invention.

The plaintiff was and is a manufacturer of children's carriages, having an office in the lower part of the city of New York, and a factory in a distant part of said city. Immediately after the execution of the instrument of January 7, 1878, Fosburgh entered the employment of the plaintiff at his factory as a painter. The plaintiff, prior to April 1, 1878, employed the patented invention to such an extent that on that day there was due to Fosburgh, as royalty, under said instrument, $105.25, less $60 expenses of the re-issue, leaving a

balance of $45.25. Meantime the plaintiff had advanced the money necessary to obtain the re-issue, and had advertised the invention, and procured engravings of it for advertising. The plaintiff testifies that on the morning of April 2, 1878, he saw Fosburgh, as usual, and told him that his account was made up and ready for him down town. The plaintiff says: "He asked me how much there was due him, and I told him that I really could not tell, as I had not stopped to figure." Fosburgh testifies as follows: "On the second of April, Mr. Dare said that 'he supposed the royalty was due on the first of the month, and I think we owe you something. I haven't figured it up yet, and don't know how much it is;' or words to that effect. * * * I asked him if he had sublicensed any parties. He said he had not; that the carriage dealers were all throwing cold water on the patent. That's about all." Fosburgh denies that Dare told him, on the second of April, that the statement was ready for him. Fosburgh continued to work at the factory until and including April 9th. On April 10th he did not go to the factory. He absented himself on that day and on the 11th, without having given notice that he would not return. On the 11th he went to the place of business of the defendant, and there announced to him, or to Jay F. Butler, or to both, that his contract with Dare was broken. He saw the defendant and Butler again on the 12th, and went with Butler on that day to a lawyer, Mr. Meyer, and submitted to him the agreement with Dare, for advice as to whether it had become void. On the 15th, Fosburgh, the defendant, and Butler went to Meyer's office, and received the advice that the contract with Dare had become void. Then, on the seventeenth of April, Fosburgh and the defendant and Butler executed an agreement, whereby Fosburgh granted to the defendant and Butler the exclusive right to make, use, and sell articles containing the invention covered by said re-issued patent for its whole term, and to grant sublicenses, they to pay him a specified royalty. The instrument recites the fact that an agreement, dated January 7, 1878, had been made between Dare and Fosburgh, and that it "is now supposed by

the parties hereto to be null and void," and the grantees agree to pay all the expense of any suits that may be brought against Fosburgh growing out of said agreement, provided they be allowed to employ such lawyers as they may select.

There was no communication between Dare and Fosburgh from the second of April until the twelfth of April. On the latter day Fosburgh went to Dare's factory. This is Dare'e testimony: "As I was going in the office, I met Mr. Fosburgh coming out. I asked him why he was not at work. He said he was not working; he was going down town. I asked him if he would call at the store and get the amount due him, or if I would bring it to the factory for him. He said he guessed not; that the time had passed at which he should receive his royalty, and that the contract was no longer good, and that he did not intend to go to work for me again. I told him it made no difference about his working; that the contract was another thing, and was as good as it ever was; that it was his fault that he did not have his money, not mine; that I had given him notice that it was ready for him; that my time and attention had been so much occupied that I had not thought to bring it to him. He then started to go out of the office, and I again asked him if he would not call at the store and get the amount due him. He said that he didn't know that he would; that he had taken legal advice, and that they told him that the agreement was no longer in force." The same evening Dare tendered to Fosburgh $45.25, and an account, sworn to that day, of articles made and sold under said agreement, from January 7th to April 1st. As a memorandum of what transpired, the parties then signed this written statement on the back of the account: "He refuses to accept it to-night, 11 P. M., April 12, '78; does not say or will not say what he will do to-morrow." The next morning the parties met again, and Dare renewed the tender, but Fosburgh declined to accept the money. On the fifteenth of April, Dare sent to Fosburgh a letter, which he received either that day or the next day, saying: "The amount of royalty due you to 1st inst., ($45.25,) of which I advised you on the 2d inst.,

and tendered you, together with sworn statement, on the 12th inst., is here at my office, subject to your order. Please call and receive the same." Nothing further transpired between Dare and Fosburgh until the latter part of June, 1878, when Fosburgh called on Dare and informed him that he, Fosburgh, had made an agreement with the defendant and Butler, and stated that he did not think they would ever do much with the article. Dare asked him if he would receive the amount due from him for April, and the amount due for July. He said he would see Dare in a day or two. A day or two afterwards Dare tendered to him the statements for April and July, and the amount due therefor. He read the statement, and said he would call on Dare on July 8th. He did so, and then received the two statements and the two amounts, $45.25 and $283.75. This suit was brought in September, 1878. Fosburgh accepted his royalties from Dare due in October, 1878, and January and April, 1879. The agreement of Fosburgh with the defendant and Butler was not recorded in the patent-office until November 4, 1878. It does not appear that Dare saw it or a copy of it, or knew its contents, until after this suit was brought.

The defendant contends that the failure of Dare to render a statement and make a payment on the first day of April, or within ten days thereafter, worked, *ipso facto*, a forfeiture of his rights under the agreement, by its terms.

It is quite clear that the first statement and the first payment became due on the first day of April, and that the position taken on the part of the plaintiff, that no statement and no payment became due until the end of the first full quarter year named in the agreement, namely, until July 1st, is not a sound one.

This is not a contest between Fosburgh and Dare. Fosburgh is willing that the agreement between him and Dare should be regarded as existing. He has recognized its continuing existence. He never forbade Dare from making articles under the patent, and never took any legal proceedings to enjoin him from doing so. Nor did Boylston and Butler. Boylston and Butler paid Fosburgh no consideration

in gross for the license to them. It does not appear that Boylston will not be in the same position, if excluded from operating under that license, that he was in before he received it. Fosburgh has accepted no royalties from him, and it does not appear that he claims any. By his conduct, Fosburgh has repudiated the validity of his license to Boylston and Butler, and, as against them, could not be heard to assert its validity. Boylston had full notice of the existence of the agreement with Dare before he took his license, and an inquiry of Dare would have shown at once that Dare did not admit that the agreement between him and Fosburgh was at an end. All the equities of the case are with the plaintiff and against the defendant. The evidence shows that Dare never had any intention of not paying Fosburgh, and that he was able and willing to do so. Under all these circumstances, if Boylston was suing Dare in equity for infringement, the court would regard the license to Dare as in full force. The same result must be reached in this suit. It does not appear that the time specified was of the essence of the contract. The provision as to the becoming void of the license was a security for the payment of royalties, and a court of equity would declare the license at an end, in a proper case, just as it will refuse to declare it at an end in a case where it would be inequitable to do so. It does not appear that the failure of Dare to actually tender the statement and money to Fosburgh before the twelfth of April operated in any manner as an injury to Fosburgh.

The foregoing remarks are made on the view that it was incumbent on Dare to seek out Fosburgh within the ten days from April 1st, and tender him the money and the statement. The agreement was a peculiar one. There would be sixty-six payments and accounts to be made during the life of the patent. No place was specified where they were to be made. It was an accident that Fosburgh happened to go into Dare's employ. The parties had given no practical construction to the contract, so as it made it reasonable for both to understand that a given way of making payment had been agreed on. Under all the circumstances in evidence it must be held,

that, after what passed between Dare and Fosburgh on the second of April, even if it be taken as Fosburgh states it, it was the duty of Fosburgh to apply to Dare for an account and a payment, and that he had no right to declare the agreement void, and to proceed to make the license to Boylston and Butler without the assent of Dare. As he did not apply to Dare, and as Dare made a complete tender to him before he made the license to Boylston and Butler, it must be held that Dare lost none of his rights, and that the defendant acquired no rights under the patent, he having taken with notice of the agreement to Dare, which notice was notice of all he might have learned by inquiry of Dare.

The defendant takes the point that the invention patented is not useful. There is sufficient utility in it to support a patent. All that the evidence amounts to is that the article is better with an added improvement. Moreover, no such defence is set up in the answer.

There must be a decree for the plaintiff for a perpetual injunction, and an accounts of profits and damages, with costs.