## WAGNER TYPEWRITER CO. v. WATKINS et al.

### (Circuit Court, S. D. New York. December 13, 1897.)

PATENTS—LICENSES—FORFEITURE—FAILURE TO PAY ROYALTIES.

An exclusive license to make and sell was granted in consideration of the licensee's agreement to pay the patentee $2,000 within three days, and $3,000 one month thereafter; "otherwise this agreement to be forfeited within ten days after such default." Provision was then made for royalties of $4 on each machine; the minimum amount of royalties, however, to be $2,400 annually. *Held*, that the provision for forfeiture applied only to the preliminary cash payments, and that the license could not, upon the facts proved, be forfeited for nonpayment of the royalties, in the absence of any express provision therefor.

This was a suit in equity by the Wagner Typewriter Company against William E. Watkins and others to remove a cloud upon the title to certain letters patent.

This is an equity action to remove an alleged cloud upon the title of the complainant to letters patent, No. 523,698, granted July 31, 1894, to Franz X. Wagner, as assignee of the inventor, Herman L. Wagner, for an improvement in typewriting machines. The second amended bill, upon which issue was joined, asks for an injunction restraining the defendants from working under the Wagner patent and from asserting or transferring any title thereto. The bill asks further that a certain license agreement, dated February 20, 1894,

be declared forfeited and void, that the defendant Watkins be restrained from asserting or transferring any rights thereunder, and that the defendants be decreed to pay the sums of money due under said license. The principal contention arises over this agreement which was made after the patent had been allowed, but five months before it was actually issued. The agreement is as follows:

"For and in consideration of one dollar to me in hand paid, the receipt of which is acknowledged, I hereby give and grant to W. E. Watkins of Upper Montclair, N. J., his heirs, administrators and assigns, the sole and exclusive right to manufacture and sell anywhere in the world the visible writing typewriter (patents on which were allowed January 9, 1894), of which I am the inventor. The said W. E. Watkins agreeing to pay me on Friday, the 23d day of February, two thousand dollars ($2,000) in cash, and on or before the 23d day of March, 1894, three thousand dollars ($3,000) in cash, otherwise this agreement to be forfeited within ten days after such default in payment has been made; and, thereafter, to begin on the last day of December, 1894, a royalty of four dollars ($4.00) on each machine sold by the said Watkins; the said Watkins agreeing to pay me a royalty of not less than twenty-four hundred dollars ($2,400) per year. The said Watkins, his heirs, administrators or assigns is also to have the right, any time within a year from this date, to pay me a lump sum of fifteen thousand dollars ($15,000) in cash, in lieu of all royalties, and I agree for myself, my heirs, administrators and assigns on said payment to make due and legal assignment of all patents, both United States and foreign, covering all the parts in said machine, to said Watkins. I also agree to make application for such additional patents, for any and all improvements already made by me on said typewriter, both United States and foreign, as said Watkins may at any time desire, and upon payment of above sum of fifteen thousand dollars to made due and legal assignment of the same to the said Watkins. The said Watkins agreeing to pay all the expenses in the prosecution of said application for patents. It is understood and agreed that any royalties accruing to me between December 31, 1894, and the day of acceptance by Watkins of the right to pay me the above sum of $15,000 shall be paid to me in addition to the fifteen thousand dollars. Witness my hand and seal this 20th day of February, 1894.

"[Signed]  Franz X. Wagner. [Seal.]
"W. E. Watkins. [Seal.]"

On the next day, February 21, 1894, Watkins for and in consideration of $5,000 transferred "a full and undivided one-third interest" in and to the license of February 20th, to John T. Underwood, and on the 23d day of February, 1894, he assigned another one-third interest to Charles F. Lantry. On the 10th of August, 1894, in consideration of $5,300 Franz X. Wagner assigned to Frank E. Hagemeyer and Charles H. Luddington, Jr.. "the said invention embraced in said letters patent," and guarantied that the patent was unincumbered, except by the license of February 20, 1894. On the 3d of January, 1896, Hagemeyer wrote the defendant Watkins stating that all of Wagner's interest in the patent had been transferred to him (Hagemeyer), and demanding the payment of $2,400 due for royalties December 31, 1895. On the 5th of February, 1896, Hagemeyer assigned all his interest in the said letters patent to the complainant. On the 7th of February, 1896, Franz X. Wagner and Herman L. Wagner assigned to the complainant, the Wagner Typewriter Company, all their right, title and interest under the agreement of February 20, 1894, "including all rights to royalties under a certain invention designated in said instrument as a visible typewriting machine, together with any and all rights which either of said Franz X. or Herman L. Wagner may have for a forfeiture of the said agreement of February 20, 1894, aforesaid, and the rights thereunder, for a failure to pay said royalties, or otherwise." On the same day—February 7, 1896—Underwood and Lantry transferred to complainant all the rights which they possessed by virtue of the transfers to them from Watkins of February 21st and February 23d of a one-third interest to each in the license agreement. On the 5th of February, 1896, Luddington wrote to Hagemeyer's attorney as follows: "I have or make no personal claim upon any interests or rights that were assigned or conveyed to me by the assignment from Franz X. Wagner to Mr. Hagemeyer

and myself dated August 10, 1894, or the assignment from Franz X. and Herman L. Wagner to Mr. Hagemeyer and myself of the same date. The interests and rights that passed to me under these instruments belong to Mr. William E. Watkins, and were placed in my name for the protection of Mr. Hagemeyer pending the repayment to him of the moneys which he expended for the purchase of the Wagner patents, as is evidenced by the agreement between Mr. Hagemeyer, Mr. Watkins and myself dated August 10, 1894." A copy of an agreement (Exhibit 6) made between Luddington and Watkins, but without date or signatures, was offered in evidence, and substantiates the statements of the foregoing letter. By the terms of the agreement Luddington declared that he held the one-half interest in the letters patent as trustee for Watkins, and agreed to convey to Watkins when $500 had been paid to him and when Hagemeyer had been reimbursed for the moneys which he had expended. Watkins made the first two payments provided for by the agreement of February 20, 1894. The amount was reduced by a contemporaneous understanding between the parties, but, in legal contemplation, the payments were made as stipulated. Watkins never manufactured or sold under the license and has never paid a dollar of royalty to any one. This action was originally brought in the supreme court of New York on the 14th day of March, 1896. At that time there was owing for royalties the sum of $2,400, due December 31, 1895. The complainant has invested large sums of money in the business, and is engaged in manufacturing typewriting machines under the Wagner patent. The defendant Watkins insists that he is the owner of rights under the patent, and that he is entitled by virtue thereof to manufacture and sell typewriting machines embodying the invention of the patent. In short, the complainant contends that the agreement of February 20, 1894, is forfeited and void; the defendant Watkins denies this, insisting that it is in full force and is not subject to revocation.

Arthur v. Briesen and Charles Strauss, for complainant.

Charles E. Hughes, for defendant.

COXE, District Judge (after stating the facts). This record presents a legal tangle which is unique and unprecedented. To define with perfect accuracy the rights of all the parties involved in this snarl of titles is a problem the solution of which can hardly be expected of a merely finite intellect. It is thought, however, that the issues involved may be disposed of without attempting so formidable a task. It is unnecessary to consider the testimony relating to the cash payments provided for by the agreement of February 20, 1894, for the reason that the complainant's brief concedes that Wagner received a sufficient amount "to estop him from claiming that he has not been paid." The source from which Watkins procured this money and his alleged indirection towards others in connection therewith are questions wholly immaterial to this dispute. It is enough that the licensee paid to the licensor the full amount agreed on between them. This sum being paid there can be no forfeiture under the written stipulations of the agreement. The only provision for a forfeiture has reference to a default in making these preliminary payments. As the payments were made, the clause providing that in case of nonpayment " this agreement to be forfeited within ten days after such default" never became operative. It is said that Watkins failed to keep the agreement for the reason that he did not pay the expenses incident to the application for additional patents. This proposition cannot be maintained. It is unable to stand alone either on the facts or the law. The license only required the payment of the expenses of such patents "as said Watkins may at any time de-

sire." He was only obligated to pay for such patents as he expressly desired and requested, and no others. The clause in the Luddington agreement is entirely too vague and general to cover the expenses now under consideration, and in no event does it inure to the advantage of the complainant. But on the facts it appears that Watkins has expended and rendered himself liable for several hundred dollars in procuring additional patents. An attempt is made to show that Watkins is acting in hostility to the Wagner patent because he threatened to sue the complainant for infringing some other patent owned by him. Without knowing what his patent covers, it is impossible to make a definite finding that the act of his solicitor in writing to the complainant was in any way hostile to the Wagner patent. It is thought, therefore, that the rights of the parties must be determined upon the written transfers alone, and that the extrinsic evidence is largely irrelevant and throws little light upon the real issue, which is aptly stated by the complainant's counsel as follows:

"What equitable rights has Watkins in said agreement? (of February 20th.) Has he forfeited them? Should the agreement be canceled as to him on complainant's prayer?"

And again,

"The principal contention in this litigation is that Watkins, wholly failing to pay the royalties and moneys due under the agreement of February 20, 1894, has forfeited his rights under said license agreement, and that therefore the court is asked to rescind the same so far as Watkins is concerned."

By the agreement of February 20th Watkins is given the exclusive right, during the life of the patent, to manufacture and sell the patented typewriter. Wagner retained the right to use, but this right, in view of what had previously been conveyed, would seem to be of no practical value. An option was given to Watkins to purchase, within a year, all the Wagner patents for $15,000, but the option was never exercised. Watkins did not obligate himself to manufacture and sell any given number of machines, but his failure to sell was guarded against by a provision that he should pay a royalty of not less than $2,400 annually. So that the agreement, so far as applicable to the patent controversy, was an exclusive license to Watkins to manufacture and sell upon the payment of a yearly royalty of $2,400. As long as this license was in force the entire interest in the patent remained in Watkins. All that Wagner retained was the right to use any machines which he then possessed. The agreement of August 10, 1894, seems to be regarded by both parties as an assignment of the title of the patent to Hagemeyer and Luddington together with the right to collect royalties under the February license. If this be the correct construction, and the court is inclined to the opinion that it is, Wagner retained no interest in the patent of the least value, and the right to demand and receive the royalties vested in Hagemeyer under the tripartite agreement referred to in the letter of Luddington of February 5, 1896.

The effect of the conveyances thus far considered was to vest the entire interest under the patent in Watkins and Hagemeyer. Wagner had no longer any interest. Watkins held an exclusive license

to make and sell, and an undivided half interest in the invention, which was held in trust for him by Luddington, who agreed to convey to Watkins when Hagemeyer was paid the amount due him and he (Luddington) was paid $500. Hagemeyer had an undivided one-half interest in the invention, and a lien on Watkins' interest until his debt for advances was discharged. In January, 1896, Hagemeyer demanded the royalties accruing December 31, 1895, and in February, 1896, he assigned all his interest in the patent to complainant. On the 7th of February, 1896, Franz X. Wagner and Herman L. Wagner, neither of whom had any tangible interest in the license to Watkins, assigned to the complainant "all their right, title and interest" therein. It will be observed that from the transfers thus far discussed the complainant obtained no right to manufacture and sell, but only the right to use the patented machine. The Hagemeyer assignment to the complainant makes no mention of any right to collect royalties, and, admitting that it conveyed the right to collect future royalties, it could hardly have been the intention to assign the $2,400 obligation then due, for Hagemeyer had made a formal demand only a month before requiring Watkins to pay to him. The same observations would apply to the assignment from Wagner to Hagemeyer were it not that at that time—August, 1894—nothing was due under the Watkins license, and all the parties to the assignment understood that the transfer of the royalties was the consideration for the $5,300 paid. Wagner swears to this expressly; that Hagemeyer so understood it is plain from his demand, and it is also conceded by complainant. Watkins never denied the obligation. The most favorable view of the complainant's interest as thus far examined gives it an undivided interest in the right to use the patented machine, and a right to collect royalties coming due after February 5, 1896. The complainant gets its right to manufacture and sell direct from Watkins, he having assigned a two-thirds interest in the license of February 20, 1894, to Underwood and Lantry, and they having assigned to the complainant in February, 1896. If, as the complainant contends, the license was forfeited by the nonpayment of royalty in December, 1895, it may be pertinent to inquire how the complainant could obtain any valid rights thereunder in February, 1896. Assuming that the license is not forfeited, then the complainant has

First. An undivided interest in the patent, carrying with it a right to use the patented machine.

Second. The right transferred by Hagemeyer to collect the royalties due after February 5, 1896, and

Third. A two-thirds interest in a license giving it the right to manufacture and sell the patented machine.

All of the interests not owned by the complainant are owned by the defendant Watkins either individually, or as beneficiary under the Luddington trust.

If it be held that the license is forfeited there still remains the Luddington interest, which it would seem may yet be acquired by Watkins on paying the amounts due to Hagemeyer and Luddington. The court is unable to see how in any event this interest can be confiscated, and Luddington be compelled to convey to the complain-

ant, in the teeth of his agreement to make no assignment "except upon the consent of said Watkins." Is the license forfeited? The complainant expressly concedes the rule "that a mere nonpayment of a license fee does not entitle a party to a decree of annulment," and this is undoubtedly the law. Walk. Pat. § 308. As before stated, there is in the agreement of February 20th, no express stipulation that forfeiture shall follow a breach of the agreement to pay royalties. The only royalty coming due prior to the commencement of this suit, was, on December 31, 1895. Assuming that Hagemeyer, as the owner of a half interest in the patent, could, without the consent of the owner of the other half, declare the license forfeited, he did not do so. He simply demanded that Watkins should pay to him. So far as appears from the proof, Hagemeyer still retains this chose in action against Watkins. Certainly he never transferred it to the complainant. It is not easy to perceive upon what theory the complainant can ask for a forfeiture, and especially in view of the apparent affirmance of the license by the demand in the bill "that the defendants may be decreed to pay to your orator the sums of money due under the said agreement of February 20, 1894." It might with some plausibility be argued, in view of the interest of the other parties in the license, that Hagemeyer had no right to require that the full amount of the royalty should be paid to him, and, therefore, that his demand of January 3d, was inoperative. It is, however, unnecessary to consider this and similar questions, and it is only mentioned to show the complex and anomalous character of the situation, and the difficulty which surrounded all the parties in asserting and maintaining their respective rights. The court has failed to find proof that any one, whether he had the right to do so or not, prior to the commencement of this action, elected to declare the license forfeited. No notice of that character was ever served upon the defendant Watkins. The only obligation resting upon Watkins under the license agreement was to pay the royalty due December 31, 1895. This sum he has not paid. No one has asked him to pay it but Hagemeyer, and the demand was not coupled with a notice that the license would be forfeited in case of nonpayment. If Hagemeyer had the right to make the demand and give the notice, he did not exercise it. No one else has done so. The court fully appreciates the unfortunate position in which the complainant is placed by what it terms the "dog-in-the-manger policy" of the defendant, but, after examining the case in all its aspects, the court is constrained to hold that the complainant's title is too obscure to warrant the decree prayed for. To say the very least, the complainant's title to all the rights under the patent is doubtful, and a forfeiture should not be declared in a doubtful case. The bill is dismissed.