## OHIO CITIZENS TRUST CO. v. AIR–WAY ELECTRIC APPLIANCE CORPORATION et al.

### Civ. No. 4860.

District Court, N. D. Ohio, W. D.
Sept. 1, 1944.

Geo. P. Smith and Effler & Eastman, all of Toledo, Ohio, for plaintiff.

George D. Welles and Fred A. Smith, both of Toledo, Ohio, Munson H. Lane, of Washington, D. C., George E. Kirk, of Toledo, Ohio, Jacobs, Blankenburg & May,. of San Francisco, Cal., Joseph Robie, Mulholland, Robie & McEwen, Charles W. Owen, and Owen & Owen, all of Toledo, Ohio, and Hadsell, Sweet & Ingalls, of San Francisco, Cal., for defendants.

KLOEB, District Judge.

The question before the Court in this case is upon the motion of the Air-Way Electric Appliance Corporation (referred to herein as Air-Way) for a summary judgment in its favor against the defendants representing or succeeding to the interests of D. Ben Replogle and F. M. Ray, the original licensors (referred to herein as Replogle-Ray).

This case was begun by the filing of a complaint by the plaintiff pursuant to the provisions of Section 41 (26), 28 U.S.C.A., reciting that the plaintiff, as trustee under patent license agreements between Replogle-Ray and Air-Way, had in its custody by

reason thereof certain property concerning which those parties were adverse claimants. The additional pleadings now filed making up the issues consist of answer and cross-claim of Mrs. Agnes Ray, answer of Air-Way to complaint in interpleader and claim of said defendant (for declaratory judgment in that its "Sanitizor Model" proposed to be manufactured by it after the war does not come within the patents of Replogle-Ray), reply of Air-Way to cross-claim of Mrs. Agnes Ray, amended answer and claim of Belle T. Replogle et al., to complaint, answer of Belle T. Replogle et al., to claim of Air-Way, answer of Air-Way to claim of Belle T. Replogle et al., reply of Air-Way to answer of Belle T. Replogle to claim of Air-Way, amendment to claim of Air-Way, answer of Mrs. Agnes Ray to claim of Air-Way, amended answer of Belle T. Replogle et al., to the amendment to the claim of Air-Way [Paragraph 28(a)], answer of Mrs. Agnes Ray to amendment to claim of Air-Way, answer of Belle T. Replogle et al., to the amendment to claim of Air-Way [Paragraph 28 (a)].

I. The motion for summary judgment asked the Court for an order "finding, adjudging and decreeing that the agreement of December 18, 1918, (the original license agreement between the parties), as amended by the agreement of November 16, 1927, and the several other amendatory agreements, between this defendant and D. Ben Replogle and F. M. Ray are, and at all times have been, contrary to law, invalid and unenforceable, and that there is no existing or future liability of any kind on the part of said defendant Air-Way to the other defendants herein, or any of them, or for the payment of any fees and expenses of the plaintiff herein, and that said defendant, Air-Way Electric Appliance Corporation, is entitled to the return to it of the $5837.08 heretofore paid in by it to the Clerk of this Court."

The contention of Air-Way on the above point is that the said agreements are "invalid because they constitute an unlawful attempt to enlarge the patent monopoly of the Replogle and Ray defendants, and to unlawfully restrain interstate commerce."

This contention is based upon the claimed effect of the language in the agreement of November 16, 1927, reading as follows: "(i) The second party, its successors or assigns, or any sub-licensees, may manufacture or sell, during the term of this agreement, any article or articles which compete with any or all of the articles manufactured or authorized to be manufactured or sold under this agreement, but in any such event or events, the trustee shall retain the title to any and all patents or applications for patents heretofore or hereafter assigned by first parties to the trustee, and it shall be wholly optional with second party as to whether it will manufacture or sell any articles under said patents or applications for patents, or any of them, heretofore or hereafter assigned to the trustee, but in any and in every such event or events, second party shall pay to first parties the same royalties that it would be required to pay to first parties if said competitive article or articles so manufactured or sold had been manufactured or sold under any patents or applications for patents, assigned by first parties to the trustee, it being the intention of this paragraph, and it is agreed that second party shall have the right in its uncontrolled discretion to use parts patented by others or unpatented, either in lieu of or in combination with parts covered by patents or application for patents covered by this agreement; but the royalty must be paid to first parties upon the Air-Way Sanitary System as a whole, and royalty must be paid to first parties upon any articles sold separate for use upon the cleaner, which in any way relate or pertain to the art of cleaning."

The theory of counsel for Air-Way is indicated by the following statement from their brief, to-wit: "In the present case, the minimum price at which the Air-Way cleaners are to be sold is, in effect, fixed by the royalty provision at a figure higher than it otherwise would be, because the amount of the royalty must be added in on every sale, and therefore the restrictions in the license contract have the effect of a price restricting clause in connection with the sale of unpatented articles and constitute an unlawful restraint of trade."

Counsel for Replogle-Ray contend that the provisions complained of in Paragraph (i) of the agreement of November 16, 1927, merely prescribe the basis upon which the royalties to be paid under the license agreements between the parties should be calculated, and that there is no invalidity in an arrangement by which the basis of royalties should be calculated upon the sales of articles involving patented parts as well as parts which are not covered by the licensed patents.

Counsel for Air-Way cite in support of their contention a number of cases which, upon examination, do not seem analogous on the facts to those admitted or uncontradicted in the pleadings and affidavits on file. Neither do any of these cases, so far as our examination discloses, lay down any general principle of law applicable to and determinative of the question in this case. Among those cases cited by counsel for Air-Way are: National Lockwasher Co. v. George K. Garrett Co., Inc., 3 Cir., 137 F.2d 255, in which the license provided that the licensee agrees to make no form of spring washers except those covered by licensor's patent, with the same provision in all its licenses, and the Court held licensor was using patent to suppress competition and extend its patent monopoly; Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852, in which, through the use of license agreements, the licensor controlled the prices at which fuel could be sold; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, in which licenses tied in with use of patented devices requirement that licensee use unpatented article sold by licensor; United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461, in which license agreement required licensees manufacturing under patent to distribute at fixed prices; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959, in which license required licensee to sell machines embodying invention under arrangement that purchaser could use same only for projecting certain kinds of film; Mercoid Corp. v. Minneapolis Honeywell Regulator Co., 319 U.S. 739, 63 S.Ct. 1328, 87 L.Ed. 1697, in which licensee of combination patent for heating system refused to license use of system unless unpatented switch manufactured by it were purchased; Mercoid Corp. v. Mid-Continent Investment Co., 319 U.S. 737, 63 S.Ct. 1319, 87 L.Ed. 1696, in which the same conclusion was reached; Barber-Colman Co. v. National Tool Co., 6 Cir., 136 F.2d 339, in which licensor had patent on process and machine to utilize process in making unpatented article, and license attempted to fix prices of unpatented articles produced by process and machine; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, which holds that licensee may set up that price fixing agreement in license is in violation of anti-trust laws, and to prove this may show that the patent is invalid. Also that price fixing is unlawful unless article on which price is fixed is covered by patent; Nachman Spring Filled Corp. v. Kay Mfg. Corp., 2 Cir., 139 F.2d 781, which held similar to the Sola case; United States v. Univis Lens Co., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408, holding that price fixing after sale by manufacturing licensee to finishing licensee is invalid in that sale of the blanks to the finishing licensee relinquished the patent monopoly; Standard Oil Co. v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926, holding that power to fix royalties may amount to price fixing if patent owner dominates industry; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 463, 58 S.Ct. 288, 82 L.Ed. 371, which is somewhat similar to the Morton Salt case, involving a process patent, and in which the patentee allowed the practice of the patent only with unpatented emulsion purchased from it; Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, holding similar to the Morton Salt case; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367, involving a method patent, holding similar to the Morton Salt case, and in which the license was on condition the material used be purchased from licensor. Other cases cited, but which seem to be not in point, are: Interstate Circuit v. United States, 306 U.S. 208, 230, 59 S.Ct. 467, 83 L.Ed. 610; Vulcan Mfg. Co. v. Maytag Co., 8 Cir., 73 F.2d 136; Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734; United States v. Hartford-Empire Co. et al., D.C., 46 F.Supp. 541.

■ No case has been cited, and we have been able to find none, holding that the amount of royalty to be paid under a license agreement may not be measured by a rate or percentage calculated upon the sales of completed devices, parts and accessories, contemplated to be manufactured under the patents involved, irrespective of whether such sales include items which do not come within the claims of the licensed patents.

In the case of Electrical Fittings Corporation v. Thomas & Betts Co., D.C.N.J., 1943, 3 F.R.D. 256, on motion for summary judgment and to dismiss the complaint, the Court held:

"1. The federal rule pertaining to summary judgments vests in court limited authority to enter a summary judgment on-

ly if it clearly appears that there is no genuine issue as to any material fact, and that moving party is entitled to judgment as a matter of law, and does not authorize court to summarily try factual issues on affidavits and depositions of parties. Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c."

"2. To authorize the granting of a summary judgment, the complete absence of any genuine issue must be apparent, and all doubts thereon must be resolved against moving party. Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c."

"3. Where record on defendants' motion for summary judgment, in action for violation of Clayton and Sherman Acts, was devoid of evidence on principal issue raised by allegation that patent involved was unlawfully used to restrain trade, to lessen competition, and to create a monopoly and disclose a disputed issue of fact as to whether plaintiff suffered injury, motion was denied. Clayton Act, §§ 3, 4, 15 U. S.C.A. §§ 14, 15; Sherman Anti-Trust Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2; Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c."

It would seem that the motion on the above ground is not well taken.

II. Air-Way further moves the Court in the alternative (if summary judgment be not entered on the first ground of its motion) to enter a summary judgment in its favor based on the pleadings and affidavits filed in support thereof, based upon the following grounds:

"(a) That the defendant, Air-Way Electric Appliance Corporation, on June 22, 1942, was entitled to and did terminate said agreements and the rights of all parties thereto, other than such as had accrued up to said date under the terms thereof, by refusing (and persisting in such refusal for more than sixty days) to pay royalties thereunder other than such as had accrued up to June 20, 1942, plus royalties on all cleaners and parts thereof covered by Replogle patents then in its possession;

"(b) That said agreements became terminated on June 20, 1942, not only for the reasons aforesaid, but also because of lawful action taken by the United States government in pursuance of statutes of the United States by which manufacture of vacuum cleaners by Air-Way Electric Appliance Corporation after June 20, 1942, became unlawful, the consideration for payment of any royalties or expenses under the terms of said agreement dated December 18, 1918, and the several agreements amendatory thereof, accruing after June 20, 1942, was destroyed, further performance of said agreements was frustrated, and all rights of all parties under said agreements accruing or to accrue by the terms thereof after June 20, 1942 lapsed and became unenforceable, and that payment of all royalties accrued or accruing up to June 20, 1942, has been duly tendered herein by Air-Way Electric Appliance Corporation to the other defendants herein; and

"(c) That upon the termination of said agreement of December 18, 1918, and the several agreements amendatory thereof, as of June 20, 1942, as aforesaid, the sole rights and remedies of the other defendants herein against Air-Way Electric Appliance Corporation were and are the termination of the rights of Air-Way Electric Appliance Corporation under said agreements, the reconveyance to said defendants other than Air-Way Electric Appliance Corporation of all patents transferred and conveyed to The Ohio Citizens Trust Company, Trustee, and payment to such other defendants by Air-Way Electric Appliance Corporation of all royalties accrued up to June 20, 1942, on cleaners and parts thereof sold or manufactured for sale by Air-Way Electric Appliance Corporation, and all royalties on all cleaners and parts thereof covered by Replogle patents in the possession of Air-Way Electric Appliance Corporation on June 20, 1942;"

(1) The provision on which Air-Way relies to support the above ground (a) is subparagraph (d) of Paragraph 4 of the agreement of December 18, 1918, which reads: "In default of such payment or any royalties due hereunder, such default continuing for a period of sixty (60) days, then all rights of said second party, its successors or assigns, to manufacture and sell said articles under said license, and all rights of each of the parties hereto as against the other, shall at once cease and determine * * *."

The letter of Air-Way to Replogle-Ray, dated June 22, 1942, enclosed a check for $5837.08 in payment of "all royalties due under the license agreement of December 18, 1918, and all agreements supplemental thereto, between this company, yourself, and F. M. Ray upon the termination of said agreements on June 20, 1942."

The letter further stated that—

"On June 20, 1942, we discontinued the manufacture of cleaning appliances in compliance with a regulation of the U.S. Government. We do not intend ever to resume the manufacture of any vacuum cleaners or parts thereof covered by any patents obtained by yourself and Mr. Ray, or either of you.

\* \* \* \* \* \* \*

"No further royalties will be paid by us under these agreements, and no further payments of fees or expenses of any kind in connection with prosecution of patent applications in your name will be made under these agreements.

"The check tendered herewith covers royalties on all vacuum cleaners sold by this company to date, and, in addition, all completed and uncompleted vacuum cleaners and parts thereof manufactured by us and remaining unsold in our possession, on which royalty is payable under the agreements upon the termination thereof. An account stated covering the payment of royalties is enclosed. The enclosed check constitutes a final and complete payment of all amounts due under the account stated and of all amounts accrued, accruing or to accrue under the aforesaid agreement of December 18, 1918, and all agreements supplemental thereto." (Exhibit B to affidavit of Joseph H. Nuffer and Exhibit 2 to answer of Mrs. Agnes Ray.)

Air-Way contends that it has the right under Paragraph 4(d) of the agreement of December 18, 1918, above quoted, to terminate the agreements and that they were cancelled by the notice of June 22, 1942.

It is the contention of Replogle-Ray that Air-Way does not have the right of termination under the agreements and the law and that the agreements remain in full force and effect until the expiration of the most recently issued patent held by the plaintiff and the expiration of any future patents coming within the scope of the agreements that may thereafter be obtained by Replogle-Ray and assigned to the trustee.

There is no provision in any of the contracts involved specifically giving Air-Way the right to terminate the licenses and the payment of royalties provided for in the agreements.

The rule on this subject is stated in Ellis on Patent Assignments and Licenses, 3d Ed., as follows:

"A License Normally Remains in Force Until the Expiration of the Patent Unless the Terms of the Contract Provide for Earlier Termination, or Unless the Parties Mutually Agree to Its Termination or Unless Rescinded for Breach of Its Terms.

"The broad general rule with regard to the term of a license was set forth by Mr. Justice Blatchford, in St. Paul Plow Works v. Starling, 140 U.S. 184, at page 196, 11 S.Ct. 803, [807], 35 L.Ed. 404, as follows:

"'We are of opinion that the license, in the absence of a stipulation providing for its revocation, was not revocable by the defendant, except by mutual consent, or by the fault of the other party.'

"See also American Street Car Adv. Co. v. Jones, C.C., 122 F. 803; [Id., 2 Cir.], 142 F. 974, and Seal v. Bookkeeper Pub. Co., 6 Cir., 130 F. 449."

In the case of American Street Car Advertising Co. v. Jones, supra, a bill in equity was filed by the owner of the patent, asking that the patent be terminated by a decree of the court and that the defendants be compelled to render an account and to pay all of the unpaid royalty due and payable under the license. The Court held, as to the term of the license: "3. A license not expressly limited in duration continues in force until the patent expires or the license is forfeited, unless sooner terminated by mutual consent; and, so long as the licensee continues to manufacture the patented article, he is presumed to do so under the license, and is liable for royalties thereunder."

In the opinion the Court said (Page 808 of 122 F.): "This action can be maintained in equity because the license was granted, went into effect, and both parties recognized and acted under it. It could not be revoked or ended except by mutual consent. The defendants have never consented to its revocation. \* \* \* A license not expressly limited in duration continues until the patent expires or the license is forfeited, if not terminated by mutual consent. St. Paul Plow Works v. Starling, 140 U.S. [184], 196, 11 S.Ct. 803, 35 L.Ed. 404; Hartell v. Tilghman, 99 U.S. [547], 556, 25 L.Ed. 357. A royalty contract is not ended by a failure to pay royalties. White v. Lee, C. C., 3 F. 222. This overrules Brooks v. Stolley, Fed.Cas. No. 1962, 3 McLean 523."

In the case of White v. Lee, C.C., 3 F. 222, cited above, it was held: "1. A

breach of covenant does not per se work a forfeiture of a patent license."

The Court in its opinion said:

"I know of no case in which a mere failure to pay money, or keep some engagement of that nature, has been held a good cause for asking a court of equity either to declare a forfeiture, or to proceed as if one had been incurred." (Page 223 of 3 F.)

"It is true, as the plaintiffs contend, that if a licensee has renounced the license he may, on the one hand, defend against the agreement and set up the invalidity of the patent; and, on the other, may be treated as an infringer. Moody v. Taber, [Fed.Cas. No. 9,747], 1 Holmes 325; Cohn v. National Rubber Co., Fed.Cas. No. 2,968, 15 Off. Gaz. 829. The mistake is in supposing that anything less than an unequivocal renunciation will work this effect. * * * That was a case in which the patentee was insisting on the contract; but no court of equity will say that a plaintiff, even if he have an election to put an end to a contract in a certain way, shall assume it to be ended without following that method, and proceed accordingly. This contract still exists until one party or the other, or both, bring it to an end. It cannot be treated as ended, as a legal consequence of a failure to pay the royalties." (Citing cases.) (Page 224 of 3 F.)

In Walker on Patents, Deller's Edition, the rule on this subject is stated as follows:

"Section 390. A license not expressly limited in duration continues till the patent expires. Birdsell v. Shaliol, 112 U.S. 485 [5 S.Ct. 244], 28 L.Ed. 768; St. Paul Plow Works v. Starling, 1891, 140 U.S. 184, [11 S.Ct. 803], 35 L.Ed. 404; Edison Electric Light Co. v. Peninsular Light, etc., Co. [C.C.], 95 F. 669, affirmed [6 Cir.], 101 F. 831; Sproull v. Pratt & Whitney Co., C.C. 1900, 101 F. 265; and [Id., 2 Cir., 1901] 108 F. 963, or the license is surrendered in pursuance of its own provision (Stimpson Computing Scale Co. v. W. F. Stimpson Co. [6 Cir., 1900] 104 F. 893, or is terminated by a new agreement (American Street Car Advertising Co. v. Jones [C.C. 1903], 122 F. 803, 808, or is forfeited by the licensee. (St. Paul Plow Works v. Starling, 1891, 140 U.S. 184, 195, [11 S.Ct. 803], 35 L.Ed. 404. * * *

"Forfeiture of a license does not follow from the single fact that the licensee has broken covenants which were made by him when accepting the license (Chadeloid Chemical Co. v. Johnson [7 Cir., 1913], 203 F. 993, unless the parties expressly agreed that such forfeiture should follow such a breach. White v. Lee [C.C. 1880], 3 F. 222; Seibert Cylinder Oil-Cup Co. v. Lubricator Co. [C.C. 1888], 34 F. 216, 221; Hammacher v. Wilson [C.C. 1886], 26 F. 239, 241; Washburn & Moen Mfg. Co. v. Wire Fence Co. [C.C. 1890], 42 F. 675; Brush Electric Co. v. California Electric Light Co. [9 Cir., 1892], 52 F. 945, 964; Platt v. Fire-Extinguisher . Mfg. Co. [3 Cir., 1894], 59 F. 897, 900. For example, in the absence of such an agreement, a mere non-payment of a license fee does not entitle a party to a decree of annulment. Wagner Typewriter Co. v. Watkins [C.C. 1897], 84 F. 57, 62; Foster Hose Supporter Co. v. Taylor [2 Cir., 1911], 184 F. 71; Rowland v. Biesecker [2 Cir., 1911], 185 F. 515. And even where such an agreement is made, it will not always be enforced by the Courts, and will never be self-enforcing. Standard Dental Mfg. Co. v. National Tooth Co. [C.C. 1899], 95 F. 291, 294; Chadeloid Chemical Co. v. Johnson [7 Cir., 1913], 203 F. 993; contra, Foster Hose Supporter Co. v. Taylor [2 Cir., 1911], 184 F. 71. For example, non-payment of royalty on the very day it becomes due, will not work a forfeiture, if that non-payment arose from lack of certainty relative to the place of payment, and from lack of demand from the licensor. Dare v. Boylston [C.C. 1880], 6 F. 493; cf. Potter v. Madison Willow Craft Co., 6 Cir., 1934, 73 F.2d 406.

* * * * * * *

"Indeed, forfeitures are not favored by the law; and Courts are always prompt to seize upon any circumstance which indicates an agreement or an election to waive one (Insurance Co. v. Eggleston [1878], 96 U.S. 572 [24 L.Ed. 841], and an injunction will issue to prevent a threatened wrongful declaration of forfeiture. (Baker Mfg. Co. v. Washburn & Moen Mfg. Co. [C.C. 1883], 18 F. 172. See Dixie Cotton Picker Co. v. Bullock [C.C. 1911], 188 F. 921, wherein the court discusses various considerations bearing upon the question of right to forfeiture; see, also, Potter v. Madison Willow Craft Co. [6 Cir., 1934], 73 F.2d 406, where, although an unqualified condition was imposed on grant of license, which was terminable upon failure to perform such condition, an ambiguous condition had been given practical interpretation by the parties in their course of dealing, and such interpretation was given it by the court in

determining whether there had been performance of the agreement." Vol. 2, Walker on Patents (Deller's Ed.), Section 390, pages 1503-1505.

A case pertinent to this question here is the case of Miller v. O. B. McClintock Co., 210 Minn. 152, 297 N.W. 724, 726, in which the plaintiff sued to recover minimum royalties under a patent license contract.

The claim was for the term of the life of the patents and any improvements thereto, the agreement providing in this respect: "This license agreement herein granted shall be and remain in full force and effect for the full life of the patents hereinbefore mentioned and for the life of any improvements of said patents hereinafter granted unless this agreement is sooner terminated by mutual consent or by the nonperformance of either party to the contract."

Defendant claimed that it had terminated the license contract by written notice of its intention to cancel and not to perform the contract. It made numerous offers of proof as to conversations between the parties prior to the execution of the contract that they intended that either party should have the right to terminate it at will. The offers were excluded but defendant was permitted to show all the circumstances surrounding the negotiations and the execution of the contract.

■ The court below held defendant was obligated by the contract to pay the stipulated royalties; that its attempt to terminate the contract was ineffective; and that the plaintiff was entitled to recover the royalties due.

The Court, on page 728 of 297 N.W., said: "The terms of the contract control as to the period during which royalty payments shall be made. Where the term fixed by the contract is the life of the patents, as here, royalty payments must be made during such term. Lauth v. McKenna Steel Working Co. [160 Wis. 309, 151 N.W. 797] and American Delinting Co. v. Pomeraning, supra [D.C., 274 F. 212]; Neenan v. Otis Elevator Co., C.C., 180 F. 997, affirmed, 2 Cir., 194 F. 414; Preston v. Smith, 156 Ill. 359, 40 N.E. 949; Hamilton v. Park & McKay Co., 112 Mich. 138, 70 N.W. 436; Union Mfg. Co. v. Lounsbury, 42 Barb., N.Y., 125; Hackett v. Hackett Hatch Door Mfg. Co., 20 Jones & S. 263, 52 N.Y. Super. Ct., 263; Bassani Processes, Inc., v. Edward Stern & Co., Inc., 125 Pa. Super, 537, 189 A. 539; Beecher v. Stein, 139 Pa. 570, 21 A. 79." See syl. 3 Patents, ☞218(3).

The Court distinguished cases cited to the contrary.

■ As to the claim of the defendant that it had the right to cancel the contract, the Court said:

"A contract for the licensing of a patent is not revocable by the licensee without the consent or fault of the patentee. St. Paul Plow-Works v. Starling, 140 U.S. 184, 11 S.Ct. 803, 35 L.Ed. 404; Dall Motor Parts Co. v. Packard Motor Car Co., 124 Ohio St. 363, 178 N.E. 835. One of the parties to a contract may terminate it if it so provides. Schwab v. Baremore, 95 Minn. 295, 104 N.W. 10; 12 Am.Jur., Contracts, 434, note 1. See Corbin, 'The Effect of Options on Consideration,' 34 Yale L.J. 571.

"Courts are inclined to construe a contract so as not to allow a party to terminate it at will without cause. Clauses that a contract may be terminated or cancelled for breach or default are construed as being intended for the benefit of the party who is not guilty of breach or default, not the one who is. In Dana v. St. Paul Inv. Co., 42 Minn. 194, 44 N.W. 55, we said: 'A party who has entered into an obligation to pay will not be permitted to set up his own voluntary default to defeat the same, unless such intention clearly and unequivocally appears.' See John v. Timm, 153 Minn. 401, 190 N.W. 890. The rule is rigorously applied in patent licensing contract cases. Comptograph Co. v. Burroughs Adding Mach. Co., C.C., 175 F. 792, affirmed 7 Cir., 183 F. 321, 37 L.R.A., N.S., 821, supra. The right of either party to terminate the contract at will does not clearly appear. On the contrary, the contract fairly construed indicates that the party not in default should have the right of termination for nonperformance by the other."

The Court further held, as to the admissibility of statements and conversations as to what the parties meant by the language of the contract: "The exclusion of the statements and conversations as to what the parties meant by the language of the contract was correct. Evidence of all the circumstances prior to and contemporaneous with the execution of the contract was admissible, but oral statements by the parties of what they intended the language to mean were not. Wilmot v. Minneapolis Automobile Trade Ass'n, 169 Minn. 140, 210 N.W. 861; Segerstrom v. Holland Piano

Mfg. Co., 142 Minn. 104, 170 N.W. 930; City of Winona v. Thompson, 24 Minn. 199; Restatement, Contracts, § 230."

In view of the foregoing law, it would seem that this ground of the motion is not well taken.

III. For the purpose of discussing ground 2(b) of the motion, it would be well to review the situation in the light of present circumstances.

The agreements, in essence, provided for the control of the Replogle-Ray patents for a consideration of a 5% royalty on the first $120,000 of gross sales, and 2½% on gross sales above that amount in each calendar year; but with a provision that minimum royalties would, in any event, be $3,600 a year. The term of the contract was for the life of the patents issued and to be issued. At this time the agreements have, presumably, at least seventeen years to run.

Under present war conditions, Air-Way is forbidden to manufacture new cleaners, but is allowed to manufacture parts and supplies for old cleaners. According to the affidavit of Mr. Nuffer, of Air-Way, the gross business thus limited amounts to about $120,000 a year. Under these circumstances, the Court feels it is entirely fair to say that Air-Way's business has not been prohibited, but merely restricted.

The doctrine of the dissolution of a contract by reason of the frustration of its commercial object arose in England, and was adopted to some extent in this country. The authorities, however, appear to be in a state of hopeless confusion both here and in England in the application of the rule. The reason for this is probably because of the general nature of the rule itself, as exemplified in the opinion of the Court in Re Badische Company, [1921] 2 Ch. (Eng.) 331. The court there said:

"The doctrine of dissolution of a contract by the frustration of its commercial object rests on an implication arising from the presumed common intention of the parties. If the supervening events or circumstances are such that it is impossible to hold that reasonable men could have contemplated that event, or those circumstances, and yet have entered into the bargain expressed in the document, a term should be implied dissolving the contract upon the happening of the events or circumstances. The dissolution lies not in the choice of one or other of the parties, but results automatically from a term of the

contract. The term to be implied must not be inconsistent with any express term of the contract. * * *"

The Court is of the opinion that it is not possible to say that, under the circumstances of this case, the parties, contemplating at the time of these agreements what has since occurred, and acting as reasonable men, would not have entered into the agreements. It must be remembered that the business has not been entirely prohibited, that the contract has still a long time to run, and that Air-Way frankly intends and is planning on full scale business after the war.

The Court feels that the most which can be said is that Air-Way's operation under the agreements, with present Government restrictions, is difficult and unprofitable because of the small volume of business allowed. But it is not enough to excuse nonperformance of a contract that war conditions have rendered its performance difficult or unprofitable. Thomson v. Thomson, 315 Ill. 521, 146 N.E. 451.

In City of Moorhead v. Union Light, Heat & P. Co., D.C., 255 F. 920, the Court held that a gas company which had accepted a franchise for a definite term, at a maximum price, was not entitled to release from its contract merely because the existence of war had made the performance of the contract at the established rate unprofitable. See also Muscatine Lighting Co. v. Muscatine, D.C., 256 F. 929, and Columbus Ry., Power & Light Co. v. Columbus, 249 U.S. 399, 39 S.Ct. 349, 63 L.Ed. 669, 6 A.L.R. 1648.

In First National Bank v. Fairchester Oil Co., 267 App.Div. 281, 45 N.Y.S.2d 532, the Court held that there was no such failure of consideration as to excuse a tenant from paying rent because Government regulations limited the volume of business, since such regulations neither prohibited nor made illegal such business, but merely restricted it.

In Lord Straphcona S. S. Co. v. Dominion Coal Co., 1926, A.C. (Eng.), 128-P.C., the Court said: "Frustration can only be pleaded when the evidence and facts on which it is founded have destroyed the subject matter of the contract, or have, by an interruption of performance thereunder so critical or protracted as to bring to an end in a full and fair sense the contract as a whole, so superceded it that it can be truly affirmed that no resumption is reasonably possible".

1018

It would seem, in view of these authorities, that the motion on this ground is not well taken.

For the reasons stated above, the motion for summary judgment is overruled in toto.